IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 3:19CR18-3-HEH |
| EDI DONALDO BARRERA-SALGUERO, ) | |
| ) | |
|    a/k/a "Roberto Gomez Balanos" ) | |
|    a/k/a "Reinaldo" ) | |
|    a/k/a "Patojo," ) | |
| ) | |
|    Defendant. | |

**UNITED STATES' POSITION ON SENTENCING**

The United States of America, through its undersigned attorneys, hereby submits its position with respect to sentencing. The United States concurs with the Probation Officer's determination that the defendant's Total Offense Level is 37 and that his Criminal History Category is I. *See* PSR, Part D. The defendant's applicable Guideline range is 210-262 months. *Id*. Pursuant to the factors contained in 18 U.S.C. § 3553(a) and for the reasons set forth below, the United States recommends a sentence of 210 months imprisonment.

## I. Background

Starting in or about 2015, Edi Donaldo Barrera-Salguero ("Barrera-Salguero") began working with a drug trafficking organization ("DTO") led by Co-Conspirator #1 to assist in the purchase and transportation of cocaine from Central America to the United States. PSR ¶ 13. In working with this DTO, Barrera-Salguero organized and coordinated the transportation of cocaine and money from various countries in Central America. *Id.* As part of his transportation responsibilities in furtherance of the conspiracy, Barrera-Salguero organized, led,

1

and managed at least one other participant in the conspiracy. *Id.* It was reasonably foreseeable to Barrera-Salguero that during the course of the conspiracy, he and other members of the DTO organized the transportation of 3,586 kilograms of cocaine for ultimate importation into the United States. *Id.* It was also reasonably foreseeable to Barrera-Salguero that during the course of the conspiracy, he and other members of the DTO organized the transportation of $8,475,850 (USD) in drug proceeds on behalf of the DTO. *Id.*

As part of the conspiracy, Barrera-Salguero agreed with Co-Conspirator #1 and Co-Conspirator #2 to transport thousands of kilograms of cocaine across Central America. *Id.* In order to fulfill this role, Barrera-Salguero communicated with Co-Conspirator #2 and other members of the DTO, as to the locations for the cocaine pick-up, the brands of cocaine to be transported, and the amount of cocaine to be transported. *Id.* In moving the cocaine, Barrera-Salguero used ground transportation. *Id.* Barrera-Salguero received payment from the DTO for his transportation services. *Id.*

In approximately 2015, Barrera-Salguero coordinated the transportation of 500 kilograms of cocaine from a Central American Source to the DTO. *Id.* Barrera-Salguero arranged for the ground transportation of the cocaine from Costa Rica to Guatemala. *Id.* In exchange for his help with coordinating and providing ground transportation, the DTO paid Barrera-Salguero a commission. *Id.*

In March 2016, Barrera-Salguero coordinated the transportation of 200 kilograms of cocaine from a Central American Source to the DTO. *Id.* Barrera-Salguero arranged for the ground transportation of the cocaine from Costa Rica to Guatemala. *Id.* In exchange for his

help with coordinating and providing ground transportation, the DTO paid Barrera-Salguero a commission.  *Id.*

In June 2016, Barrera-Salguero coordinated the transportation of 381 kilograms of cocaine from a Central American Source to the DTO.  *Id.*  Barrera-Salguero arranged for the ground transportation of the cocaine from Costa Rica to Guatemala.  *Id.*  Once the cocaine arrived in Guatemala, the 381 kilograms were seized by Guatemalan law enforcement authorities during a traffic stop.  *Id.*  The traffic stop and seizure of the 381 kilograms of cocaine occurred in the vicinity of Barrera-Salguero's commercial trucking business "Importadora La Zarza Encendida."  *Id.*

It was further part of the conspiracy that Barrera-Salguero agreed with Co-Conspirator #1 to transport bulk cash drug proceeds across Central America on behalf of the DTO.  *Id.*  In this role, Barrera-Salguero communicated with Co-Conspirator #2 and other members of the DTO, as to the movement of bulk cash derived from cocaine trafficking.  *Id.*  In moving the cash, Barrera-Salguero used ground transportation related to his commercial trucking business.  *Id.*  Barrera-Salguero received payment from the DTO for his transportation services.  *Id.*

At all relevant times, Barrera-Salguero knew and had reasonable cause to believe that the cocaine distributed by the DTO and transported by him as part of this conspiracy would be unlawfully imported into the United States.  *Id.*

On February 5, 2019, Barrera-Salguero was charged in a one-count Indictment.  PSR ¶ 1.  The Indictment charged the defendant with Conspiracy to Distribute 5 Kilograms or More of Cocaine, Knowing, and Intending that it would be Unlawfully Imported into the United States, in violation of 21 U.S.C. §§ 963 and 959(a).  *Id.*  On September 14, 2020, Guatemalan authorities

arrested Barrera-Salguero in Guatemala and he was extradited to the United States on February 5, 2021. PSR ¶ 7.

On March 30, 2021, the defendant entered a plea of guilty to count one of the Indictment, with the benefit of a written plea agreement. PSR ¶ 2. As part of the plea agreement, the parties agreed to the following: (a) pursuant to Section 2D1.1(c)(1) of the Sentencing Guidelines, relating to Drug Quantity, the defendant conspired to distribute or it was reasonably foreseeable to the defendant that his co-conspirators distributed 450 kilograms or more of cocaine knowing and intending that it would be unlawfully imported into the United States (Level 38); (b) pursuant to Section 3B1.1 of the Sentencing Guidelines, the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than as described in Section 3B1.1(a) or (b), resulting in a two-level enhancement; (c) the defendant has assisted the government in the investigation and prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, and thus the defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a) and the government agrees to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level; (d) the United States will agree to recommend a sentence of no more than 210 months of imprisonment for the defendant. PSR ¶ 4. The Court accepted the defendant's plea and sentencing was set for August 6, 2021.

## II. Acceptance of Responsibility

The United States moves to permit defendant to receive a third point for acceptance of

responsibility, pursuant to U.S.S.G. § 3E1.1(b), as defendant has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the [United States] to avoid preparing for trial and permitting the [United States] and the court to allocate their resources efficiently."

### III. Position on Sentencing and Argument

Based on the nature and circumstances of the defendant's conduct, seriousness of the defendant's conduct, the need to deter the defendant, and the need to protect the public from defendant's future criminal conduct, the United States recommends a sentence of 210 months imprisonment.

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

A.     **Nature and Circumstances of the Offenses**

Over the course of several years, Barrera-Salguero knowingly participated in a large-scale international drug trafficking conspiracy that transported thousands of kilograms of cocaine from Central America to the United States.   Reporting directly to the heads of the DTO, Co-Conspirator #1 and Co-Conspirator #2, Barrera-Salguero served a trusted cocaine trafficker and money transporter for the organization.   Directly related to Barrera-Salguero's participation in the conspiracy, the DTO successfully moved over 3,586 kilograms of cocaine and $8.4 million of bulk cash during the relevant period.

As an outside contractor for the DTO, Barrera-Salguero served primarily as the manager of a transportation cell that moved cocaine and drug proceeds throughout Central America. With the ability to successfully transport large amounts of cocaine from Costa Rica to Guatemala, and money from Guatemala to Costa Rica, Barrera-Salguero's was an extremely important asset to the DTO.   Trusted with millions of dollars and large amounts of cocaine, Barrera-Salguero provided a unique ability to move DTO assets successfully without fear of theft.   Barrera-Salguero involvement with the DTO over the course of several years proves his vital role in the conspiracy.

Therefore, the nature and circumstances in this case warrant a sentence of 210 months.

B.     **History and Characteristics of the Defendant**

The defendant is 46 years old, with no prior convictions, resulting in a Criminal History Category I.   PSR ¶¶ 30-31.   Barrera-Salguero was born in Guatemala and has lived there his entire life.   PSR ¶ 39.   The defendant is currently separated from his wife and has three children, ages 25, 18, and 152.   PSR ¶ 40.   In addition, the defendant has two children with

another woman, ages 4 and 2.  PSR ¶ 42.

In terms of physical condition, Barrera-Salguero reports diabetes, prostate issues, hemorrhoids, and back pain.  PSR ¶¶ 45-46.  The defendant reports no history of substance abuse or mental health issues.  PSR ¶¶ 47-48.  The defendant completed the Guatemalan equivalent of the 10th grade of high school but dropped out the following year to work with his father.  PSR ¶ 49.  From January 2003 through 2017, Barrera-Salguero owned and operated Importadora La Zarza Encendida, a transportation business, and imported vehicles from the United States for resale in Guatemala.  PSR ¶ 50.  The defendant owed approximately $100,000 in back taxes to the Internal Revenue Service for vehicles purchased in the United States.  PSR ¶ 51.

**C.     A Sentence Within the Guidelines Serves the Factors of § 3553**

1. <u>Seriousness of the Offense; Provide Adequate Punishment</u>

This factor supports a 210-month sentence.  The defendant, a Guatemalan drug trafficker, is responsible for assisting in the operation of a large scale international DTO.  By running a cocaine transportation network and moving large amounts of cocaine and money, Barrera-Salguero was an essential component to the conspiracy.  By assisting in this conspiracy for several years, Barrera-Salguero's actions led to the transportation of over 3,586 kilograms of cocaine and $8.4 million dollars in Central America.  Without experienced and capable transporters such as Barrera-Salguero, large scale DTOs are unable to move the scale of cocaine that makes the drug trade so profitable.  As a result, this defendant's actions should be viewed as especially serious warranting a 210 month sentence.

2. <u>Need to Deter Future Criminal Conduct</u>

A 210-month sentence will ensure that the defendant fully appreciates the gravity of his conduct in this case. In addition, a sentence of 210 months will also significantly deter future criminal conduct by others, to include leaders within the cocaine trade, who are interested in importing cocaine to the United States. This case should send a clear signal to all drug traffickers in managerial roles that we will not tolerate sophisticated efforts to transport cocaine throughout Central America destined for the United States.

3. <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

To be sure, the sentence imposed on Barrera-Salguero should take into consideration the need to protect the public. Due to his involvement in a conspiracy to import over 3,586 kilograms of cocaine into the United States, Barrera-Salguero's actions have severely harmed the public. Barrera-Salguero profited, and helped others profit, by moving millions of doses of cocaine from their source of supply to countless end users. The defendant also moved over $8 million dollars of drug proceeds—money that was likely reinvested into the cocaine business. Without Barrera-Salguero's efforts or participation in this cocaine trafficking conspiracy, the DTO would not have been as efficient in spreading its cocaine into the United States.

As this Court is well aware, cocaine trafficking is an extremely violent business that has led to the deaths of thousands of individuals over the last several decades. Although the United States has no direct evidence tying Barrera-Salguero to in violent acts, the DTO he associated with did engage in violence. Coupled with this violence on the trafficking side, is the highly addictive nature of cocaine that has not only ruined thousands of people's lives but in some cases lead to their death. Cocaine traffickers like Barrera-Salguero should be held responsible for

these consequences.

Therefore, a sentence of 210 months is appropriate to protect the public from the defendant's future criminal behavior.

### 4. Need to Avoid Unwarranted Disparities

The defendant's activities fall within a range of conduct not typically seen by this Court. Based on the enormous drug weight involved in the conspiracy and the defendant's role within the DTO, Barrera-Salguero's case is certainly unique. However, in comparison to other members of the conspiracy, a 210-month sentence is appropriate taking into consideration that other comparable co-conspirators, Co-Conspirator #3 and Co-Conspirator #4, received the same sentence. In comparison, the leaders of the DTO, received significantly greater sentences, Co-Conspirator #1 a 282-month sentence and Co-Conspirator #2 a 300-month sentence.

In addition, the evidence suggests that following the June 2016 seizure outside his business, Barrera-Salguero withdrew from the conspiracy and did not participate in further cocaine trafficking. Although the defendant's "wake up call" may have occurred following significant criminal acts, the United States recognizes this decision to voluntary leave the conspiracy and the drug trafficking business warrants this Court's notice.

Therefore, a sentence of 210 months is appropriate in this case to avoid unwarranted disparities between his sentence and the sentence of a like-positioned defendant.

## IV. Conclusion

For the reasons stated above, the United States submits that a sentence of 210 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

_____/s/_____
Erik S. Siebert
Heather Mansfield
Assistant United States Attorneys
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Email: erik.s.siebert@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Ali Amirshahi, Esq.
    101 Shockoe Slip, Suite J
    Richmond, VA 23219

                                              /s/
                                    Erik S. Siebert
                                    Heather Mansfield
                                    Assistant United States Attorneys
                                    United States Attorney's Office
                                    600 East Main Street, Suite 1800
                                    Richmond, Virginia 23219
                                    Phone: (804) 819-5400
                                    Fax: (804) 771-2316
                                    Email: erik.s.siebert@usdoj.gov